**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION**

| | | |
|---|---|---|
| The P3 Group, Inc. and Dee Brown, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 2:24 CV 136-KGB |
| | ) | |
| Illinois Valley Public Telecommunications | ) | |
| Corporation d/b/a WTVP-TV, and | ) | |
| The Public Broadcasting Service | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

The Defendants, Illinois Valley Public Telecommunications Corporation d/b/a WTVP-TV (WTVP) and The Public Broadcasting Service (PBS), submit their Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), as follows:

**INTRODUCTION**

This action arises out of WTVP's alleged breach of an oral contract between WTVP and Plaintiff, The P3 Group, Inc. (P3), or, perhaps, Plaintiff Dee Brown. The supposed breach of contract involves WTVP's acceptance of television programming created by P3 in exchange for tax deductions. The balance of the Plaintiffs' numerous claims involve WTVP and PBS's alleged use of the programming which was previously donated. The Complaint asserts five counts: (I) breach of contract against WTVP; (II) unjust enrichment against WTVP; (III) copyright infringement against WTVP and PBS; (IV) invasion of privacy

(Appropriation of Name and Likeness – Ark. Code Ann. § 4-75-1101 et seq.) against WTVP and PBS; and (V) negligence against WTVP.

Under Rule 12(b)(2), the entirety of the Complaint should be dismissed for want of personal jurisdiction over a necessary defendant. Indeed, Plaintiffs have not alleged any facts that support Arkansas's exercise of personal jurisdiction over either foreign Defendant.

Venue is also improper, warranting dismissal pursuant to Rule 12(b)(3). The Complaint fails to cite the correct venue statute controlling federal copyright claims, and fails to allege any facts that would support this forum as the correct venue thereunder.

Finally, the Complaint suffers from serious pleading deficiencies warranting dismissal under Rule 12(b)(6). Count I (breach of contract) should be dismissed because it fails to establish existence of a valid contract. Count II (unjust enrichment) should be dismissed because it fails to plead unjust enrichment as an alternative theory of recovery and does not assert the scope of the "unjust" (as opposed to licensed) enrichment. Count III's copyright infringement claim should be dismissed because, even as alleged, there was no infringement of exclusive ownership rights and no satisfaction of the legal prerequisite for statutory damages under the Copyright Act. Count IV's statutory invasion of privacy claim is preempted by the Copyright Act and, even if not preempted, fails to establish unauthorized commercial use as required for liability under the Arkansas Publicity Act. Finally, Count V (negligence) should be dismissed because it fails to state a legal duty in tort, and, alternatively, is barred by the economic loss doctrine.

## RELEVANT FACTUAL ALLEGATIONS

The Complaint alleges that P3 and WTVP entered into an agreement on or about January 2022. Compl. ¶ 32. Brown, as agent for P3, was in discussions with WTVP's station

manager, Lesley Matuszak, whereby they agreed that Brown and P3 would deliver to WTVP episodes of public television programming and, in exchange, Matuszak would provide P3 with a letter valuing the episodes at $2,922,300 which the letter would claim was a "tax-deductible contribution." Compl. ¶¶ 7, 14-18. The Complaint incorporates two exhibits purporting to demonstrate this understanding. Compl. ¶ 17.

The Complaint asserts that P3 and Brown produced 180 episodes between 2022 and 2024, filming them in Peoria, Illinois and Marion, Arkansas, and that a "significant" portion of pre- and post-production work was performed in Arkansas. Compl. ¶¶ 12-14.

Plaintiffs allege WTVP received certain promised episodes, and Matuszak drafted and sent the tax-deductible contribution letter to P3 on February 3, 2023. Compl. ¶ 17(a). A purported copy of Matuszak's letter is attached to the Complaint as Exhibit A. Compl. ¶ 17(a). On February 27, 2023, P3 responded to Matuszak, acknowledging receipt of the letter and relinquishing all intellectual property rights in the episodes. A copy of P3's response letter is attached to the Complaint as Exhibit B. Compl. ¶ 17(b).

Plaintiffs further allege that Matuszak resigned her position on September 27, 2023 and died the following day. Compl. ¶ 20. WTVP subsequently contacted Brown and P3 to determine the nature of the above-described arrangement, as shown in Complaint Exhibit C. Compl. ¶¶ 21-22. Brown responded by admitting that there was never a formal agreement, but he forwarded Matuszak's "official receipt" letter to P3 (Exhibit A) and P3's response (Exhibit B). *See* Compl. Ex. C at 1.

On March 22, 2024 WTVP rescinded Matuszak's February 3, 2023 letter as set forth in Exhibit D to the Complaint. Compl. ¶ 26. Plaintiffs apparently admit the episodes were no longer available on WTVP and PBS's respective websites by no later than May 2, 2024. *See*

Compl. ¶¶ 8-9, notes 1-2.

According to the Complaint, Brown is a resident of Arkansas, while P3 is incorporated in Tennessee. Compl. ¶¶ 1-2. Plaintiffs allege WTVP is an "Illinois limited liability company" which has a website where users may visit and watch local television programing. Compl. ¶¶ 3, 25. They allege PBS is a non-profit corporation incorporated under the laws of the District of Columbia. Compl. ¶ 4. The Complaint claims venue is proper under both 28 U.S.C. § 1391 and 28 U.S.C. § 1400(a). Compl. ¶ 6.

## STANDARDS OF REVIEW

This Motion is predicated on Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), each of which trigger a different standard of review.

### A.    Rule 12(b)(2) Standard of Review – Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) authorizes the dismissal of an action if personal jurisdiction is lacking in the forum. Fed. R. Civ. P. 12(b)(2). To survive a 12(b)(2) motion to dismiss in the absence of jurisdictional discovery or evidentiary hearing, a plaintiff must make a *prima facie* showing of jurisdiction. *AFTG–TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012). In evaluating that showing, a court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Uncontroverted allegations in a plaintiff's complaint must be accepted as true, and any factual conflicts in the parties' evidence must be resolved in the plaintiff's favor. *AFTG–TG*, 689 F.3d at 1360. However, the plaintiff is entitled to only those inferences that are reasonable. *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1338 (Fed. Cir. 2006).

### B.    Rule 12(b)(3) Standard of Review – Venue

There is no exhaustive list of specific factors to consider in analyzing whether venue is proper, and district courts therefore weigh any case-specific factors relevant to convenience and fairness. *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010). Although deference may generally be given to a plaintiff's choice of forum and thus the party asserting venue is improper bears the initial burden to contest it, this practice is based on an assumption that the plaintiff's choice is a convenient one. *In re. Apple, Inc.*, 602 F.3d at 912. As such, "[w]here one party makes a bald claim of venue and the other party contradicts it, a district court may look beyond the pleadings to determine whether the chosen venue is appropriate." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809-10 (7th Cir. 2016) ("Rule 12(b)(3) is a somewhat unique context of dismissal in that a court may look beyond the mere allegations of a complaint and need not view the allegations of the complaint as the exclusive basis for its decision."). *See also Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2003) (noting for a 12(b)(3) motion that the court "may consider facts outside the pleadings"); *Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998) ("Plaintiff contends that in responding to a motion to dismiss for improper venue, he was entitled to rely upon the well pled facts of his complaint. This is true, however, only to the extent that such facts are uncontroverted by defendant's affidavit."); *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (same).

### C.    Rule 12(b)(6) Standard of Review – Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this standard, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). Conclusory allegations are "not entitled to be assumed true" and cannot be considered for the purpose of determining whether the complaint states a claim for relief. *Ashcroft*, 556 U.S. at 681.

## ARGUMENT

### I. Motion to Dismiss Pursuant to Rule 12(b)(2) (Lack of Personal Jurisdiction)

This Court lacks personal jurisdiction over the Defendants for want of contacts between them and the State of Arkansas. A court in Arkansas may establish "long arm" personal jurisdiction over a defendant if the plaintiff establishes that the defendant has solicited accounts in Arkansas remotely from outside the state, or if the defendant has obtained for collection any account in this state by such means. Ark. Code. Ann. § 17-24-401 (2023). The Complaint articulates no basis for personal jurisdiction, and indeed none exists. WTVP has not solicited or obtained any accounts in Arkansas.

Even if the Defendants are found to be subject to Arkansas' jurisdiction by its long-arm statute, actually *subjecting* them thereto would offend the Due Process Clause of the Constitution. Arkansas clearly lacks either general or specific jurisdiction over WTVP. Both require at least some purposeful contact with the forum state.

### A. <u>This Court Lacks Specific Jurisdiction Over the Defendants</u>

This Court lacks specific jurisdiction over WTVP and PBS and, as such, subjecting them to suit under the laws of Arkansas would violate their due process rights.

Specific jurisdiction, as defined by *International Shoe* and its progeny, has consistently

provided that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemp. Comp. and Placement*, 326 U.S. 310, 316 (1947) (internal quotation omitted); *see also* U.S. Const. Amend. XIV. The minimum contacts relationships must arise out of contacts that the "defendant himself" creates with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Regardless of the significance of the plaintiff's contacts with the forum, "those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Walden*, 571 U.S. at 285 (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). In this case, the Plaintiffs are the only connection between Arkansas and WTVP—and that link is tenuous, at best. Any connection to PBS is even more tenuous.

Consider *Walden v. Fiore*. In *Walden*, the Supreme Court found that a court in Nevada could not exercise personal jurisdiction over a DEA officer from Georgia on the basis that he knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada. *Walden*, 571 U.S. at 279. In August of 2006, Walden was an officer for the DEA working in Atlanta, while Fiore was a professional gambler who lived in California and Nevada. Fiore was returning from a gambling trip in Puerto Rico with $97,000 in cash. *Id.* at 279-80. Walden's suspicions were raised about the money thanks to a tip from officers in Puerto Rico and, aided by his drug sniffing dog, Walden confiscated the cash and let Fiore go, informing her she could have the money back after proving she got it legitimately. The money was returned to Fiore in March of 2007. *Id.* at 281.

The Supreme Court in *Walden* held that Nevada did not have personal jurisdiction. It found that Walden did not himself create the contact with the forum state; rather, Fiore did. The Court reasoned that this was not sufficient to establish minimum contacts between Walden and Nevada, noting it was improper to attribute a plaintiff's forum connections to a defendant and treat them as decisive for jurisdictional purposes. *Id.* at 289. The *Walden* Court also found that the contacts analysis looks to those contacts the defendant created with the forum state, rather than with persons who reside within it. *Id.* at 284-285.

In this case, WTVP likewise has no contact with Arkansas. WTVP is linked to Arkansas only through Plaintiff Brown, who lives in Arkansas (but P3, the business through which WTVP interacted, is a Tennessee corporation). Compl. ¶¶ 1-2. The Plaintiffs and WTVP allegedly discussed either P3 or Brown's donation of content to be used to further WTVP's charitable mission. It is not alleged that any of those discussions happened in Arkansas.

WTVP has no other contacts with Arkansas. WTVP content—including #HBCYou and Self-Made—are transmitted by local broadcast and uploaded to the internet via its website, PBS.org, and YouTube.com. Neither its broadcasts nor its internet presence purposefully contacts Arkansas. In fact, WTVP's broadcasts do not cover any portion of Arkansas. Ex. 1, Declaration of Jenn Gordon ¶ 6. Indeed, WTVP is prohibited, by agreement with PBS, from broadcasting into areas covered by other PBS member stations. Ex 1, Decl. of Gordon ¶ 7. Therefore, WTVP's broadcasts do not constitute a contact with Arkansas.

WTVP's website, and its uploaded content to YouTube, are not "contacts" with Arkansas for personal jurisdiction purposes even though they may be accessed by viewers in Arkansas. The Eighth Circuit has adopted the *Zippo* rule: simply because a web site or a social media account can be accessed from anywhere does not itself subject the owner to the

jurisdiction everywhere. *Lakin v. Prudential Secs., Inc.*, 348 F.3d 704, 711 (8th Cir. 2003).

The only way an Arkansas viewer can find WTVP on the internet is for that viewer to specifically search for it. Browsing a website is certainly not akin to "entering into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet." *Lakin*, 348 F.3d 704 at 711 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Indeed, the user experience is little more than what one would experience on "[a] passive Web site that does little more than make information available to those who are interested in it." *Id.*

WTVP, as a member station, provides content to PBS.org, which also does not constitute a contact with Arkansas for personal jurisdiction purposes. Ex. 2, Decl. of Ira Rubenstein ¶ 8. Once a user navigates to PBS.org they are prompted to either enter their zip code or confirm their location. Ex. 2, Decl. of Rubenstein, ¶ 6. PBS.org then localizes the user experience to the station in the location and displays content based on the viewership area where the user is located. *Id.* As such, uploads by WTVP to PBS.org do not constitute a contact between WTVP and Arkansas. Consequently, PBS, likewise, has no relevant contacts with Arkansas as to the actual subject of this action (the content alleged to have been created by the Plaintiffs).

As illustrated by the arguments above, neither Defendant created any purposeful or meaningful contacts with Arkansas. For purposes of this lawsuit, their only link is WTVP's contact with the Plaintiffs. They should not be subject to suit in this jurisdiction.

### B.    Arkansas Lacks General Jurisdiction Over WTVP and PBS

Neither Defendant is subject to Arkansas law by general jurisdiction, either, as they are not "at home" in Arkansas. A court may assert general jurisdiction over foreign

corporations to hear claims against them "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). In *BNSF*, the Supreme Court found that Montana could not exercise jurisdiction over a railroad, pursuant to its rule allowing for personal jurisdiction over persons found within Montana, where the railroad was not incorporated in Montana, did not maintain its principal place of business there, and was not so heavily engaged in activity in Montana as to render it essentially at home in Montana, given that, although it had over 2,000 miles of track and more than 2,000 employees in Montana, it also operated in many other places.

WTVP, the "doing business as" name of an Illinois limited liability company organized under the laws of Illinois, is not alleged to have any assets or employees in the State of Arkansas. Compl. ¶ 3. And it does not. Ex. 1, Decl. of Gordon ¶10. It also does not advertise within the state or solicit donations from it residents. *Id.* ¶¶ 8-9. Clearly, Arkansas lacks general jurisdiction over WTVP.

Likewise, the Complaint makes no effort to establish personal jurisdiction over PBS. There is no allegation that PBS, an entity incorporated under the laws of the District of Columbia, has any assets or employees in this state. Compl. ¶ 4. The Complaint correctly identifies WTVP, a local public television station, as an Illinois company with the legal name of Illinois Valley Public Telecommunications Corporation. *Id.* ¶ 3. This demonstrates the Plaintiffs' correct understanding that local PBS member stations are independently owned and operated. Ex. 1, Decl. of Gordon ¶ 5; Ex. 2, Rubenstein Decl. ¶ 4. This has the effect of highlighting the absence of allegations establishing that PBS is essentially at home in Arkansas. Nor could there be. PBS does not have any assets or employees within Arkansas.

Ex. 2, Rubenstein Decl. ¶ 5. Arkansas thus does not have general personal jurisdiction over PBS.

Therefore, this Court should dismiss the Complaint for lack of personal jurisdiction.

## II.    Motion to Dismiss Pursuant to Rule 12(b)(3) (Improper Venue)

### A.    Copyright venue under 28 U.S.C. §1400(a)

The Eastern District of Arkansas is an improper venue to adjudicate the Complaint under the proper copyright venue statute, 28 U.S.C. § 1400, as neither WTVP nor PBS reside or can be found in Arkansas. The appropriate venue for claims involving federal copyrights are "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400; *Lumiere v. Mae Edna Wilder, Inc.*, 261 U.S. 174, 176 (1923). The venue statute is mandatory and exclusive. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784 (9th Cir. 1977).

The Plaintiffs allege venue is proper because a "substantial part of the events or omissions" giving rise Plaintiffs' claims took place therein; specifically, that some portion of the "copyrightable" material was produced in Arkansas. However, such reliance on the general venue statute is wrong in this copyright infringement action, and the cited fact is irrelevant to 28 U.S.C. § 1400. In fact, neither WTVP or PBS reside in, or can be found in, Arkansas. WTVP has no contact with Arkansas, while PBS is located in Virginia, and is organized under the laws of the District of Columbia. *See* Exs. 1, 2.

### B.    Forum *Non Conveniens*

Even if this action as filed were otherwise proper, which it is not, the instant forum is inconvenient for the parties. Pursuant to 28 USC § 1404(a), a district court may transfer any civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses." Here, for want of personal jurisdiction WTVP cannot be tried in

Arkansas. And, for want of appropriate forum under the federal copyright venue statute, Plaintiffs' claims cannot be tried in Arkansas. Unless Plaintiffs choose to forgo pursuit of much of their Complaint, they will need to file in another district. To avoid concurrent actions—which would force the parties to litigate the same facts in two different forums—this Court should dismiss this claim or transfer the entirety of this action to an appropriate district.

### III.   Motion To Dismiss Pursuant to Rule 12(b)(6)
### (Failure to State a Claim)

The Complaint asserts a mix of statutory and common law claims: (Count I) breach of contract against WTVP; (Count II) unjust enrichment against WTVP; (Count III) copyright infringement against WTVP and PBS; (Count IV) invasion of privacy (Appropriation of Name and Likeness – Ark. Code Ann. § 4-75-1101 et seq.) against WTVP and PBS; and (Count V) negligence against WTVP. None of these counts satisfies the applicable pleading standard.

### A.    Count I fails to state a claim for breach of contract.

Count I warrants dismissal because the exhibits foreclose the existence of an enforceable contract. P3 claims that WTVP breached an alleged agreement involving television episodes, which the Complaint refers to collectively as "the 'Intellectual Property.'" Compl. ¶¶ 14-17. As summarized above, P3 alleges it created the episodes in exchange for WTVP acknowledging a tax-deductible contribution for each episode in a set amount, and P3 granted a "royalty-free license" to WTVP to share the works. Compl. ¶¶ 16-18. P3 alleges WTVP failed to abide by the agreement by rescinding the 2022 deduction and refusing to provide any other deduction, but continued to benefit from its use of the episodes. Compl. ¶¶ 27, 30.

Attached to the Complaint are two exhibits purporting to show the "agreement and actual course of performance." Compl. ¶ 17, Exs. A, B. Exhibit A purports to be a tax-deductible contribution receipt from WTVP to P3; Exhibit B purports to be P3's acknowledgment of the receipt and grant of license for certain episodes. Compl. ¶ 17.

Documents attached to a complaint as exhibits are "part of the pleading for all purposes." Fed. R. Civ. Pro. 10(c). Courts, therefore, can and should consider such documents in connection with a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). It is axiomatic that a breach of contract claim depends on existence of a valid contract, the standard elements of which the plaintiff must plead and prove. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) (listing "standard [elements] of common law" breach of contract: (1) offer and acceptance; (2) consideration; (3) definite and certain terms; (4) performance by plaintiff; (5) breach; (6) damages) (quotation omitted); *U.S. v. Basin Elec Power Co-op*, 248 F.3d 781, 810 (8th Cir. 2001) (breach of contract elements include "existence of a contract"). When an exhibit contradicts the complaint allegations, "the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). In this manner, a breach of contract claim can be dismissed due to the plain language of an exhibit to the complaint. *Bogie*, 705 F.3d at 609 (noting, in such instances, "ruling against the non-moving party on a motion to dismiss is consistent with our obligation to review all facts in the light most favorable to the non-moving party")*; Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 793 (8th Cir. 2014) (affirming dismissal of complaint with breach-of-contract claim which was "foreclosed" by plain language of exhibit purporting to be contract).

Here, the Complaint alleges the "agreement and actual course of performance" are set

forth in Exhibits A and B. Compl. ¶ 17. However, Exhibit A does not make any reference to an agreement; nor does it mention television episodes. Rather, Exhibit A offers a mere acknowledgment of a tax-deductible contribution. Exhibit B does not somehow spawn an agreement—there is no statement of terms, no confirmation signed by WTVP, and no evidence of a meeting of minds. Then, in Exhibit C (correspondence between WTVP and the P3), Plaintiffs state: "*We never had a formal agreement.*" Compl. Ex. C at 1 (emphasis added). Even as alleged on the face of the Complaint (of which the Exhibits are considered a part), there was objectively no contract between WTVP and P3.

As such, Count I fails to state a breach of contract claim upon which relief can be granted. Dismissal is proper pursuant to Rule 12(b)(6).

> **B.    Count II does not state a claim for unjust enrichment because it fails to plead an alternative theory of recovery to breach of contract and fails to articulate the scope of the "unjust" enrichment.**

Count II likewise fails to articulate a cognizable claim. The basic elements of an equitable unjust enrichment claim are that a party unjustly received a benefit, to which they are not entitled, and which they must return. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011); *Coleman Consulting, LLC v. Domtar Corp.*, 115 F.4th 880, 888 (8th Cir. 2024). There generally can be no unjust enrichment when there exists a valid and enforceable contract; unjust enrichment must be asserted in the alternative to breach of contract or otherwise dismissed. *Toulon v. Continental Cas. Co.*, 877 F.3d 725, 742 (7th Cir. 2017); *Coleman*, 115 F.4th at 888. The law will not accommodate an implied contract (that is, unjust enrichment) when an actual contract governs the transaction. *Toulon*, 877 F.3d at 742; *Coleman*, 115 F.4th at 888.

The instant Complaint asserts both breach of contract and unjust enrichment claims

arising out of the same benefit allegedly received by WTVP. Count II for unjust enrichment is not clearly identified as pleaded in the alternative to Count I for breach of contract. Regardless, even assuming Count II is deemed alleged in the alternative, Count II fails to adequately allege a theory of relief to permit such pleading.

Unjust enrichment is premised on a party being *unjustly* enriched, that is, receiving a benefit to which it is not entitled. P3 claims the television episodes it produced were "published" on the WTVP and PBS websites, and thus furthered WTVP progress toward PBS reporting standards. Compl. ¶ 25. Count II alleges WTVP in this manner "took the benefit" of the material. *See* Compl. ¶¶ 29-30, 39-42. In short, the benefit allegedly received by the Defendants was the unauthorized use of the material. Compl. ¶¶ 39-42. However, P3 also alleges it initially granted a license for use. Compl. ¶¶ 17, 18. Count II as pled is unlimited as to the scope of unauthorized use which forms the basis for the unjust enrichment claim, despite simultaneously alleging that there was at some point a license authorizing the same use.

Federal Rule of Civil Procedure 8 allows for inconsistent allegations for separate claims, but not within the same cause of action. While Rule 8 may allow a plaintiff to alternative plead breach of contract and unjust enrichment, the alternative nature of these claims must be identified. The unjust enrichment count must allege there was no valid contract in order to state the second, alternative cause of action. *See*, *e.g.*, *Samuels v. Old Kent Bank*, No. 96 C 6667, 1997 WL 458434, *12-13 (N.D. Ill. Aug. 1, 1997) (explaining complaint may not assert both an unjust enrichment and breach of contract claim without alleging the contract was invalid to permit alternative unjust enrichment theory).

Here, the Complaint instead alleges the existence of a valid contract *and* an unjust

enrichment claim based on the same premise. This is not proper, given that there can be no unjust enrichment in a contract case. The Complaint also alleges the existence of a license granted to WTVP for use of the material *and* an unjust enrichment claim based on the same use, with no allegation regarding the scope of the use which was unjust (as opposed to licensed). This is also not proper, given that unjust enrichment hinges on a party's receipt of a benefit which it is *not* licensed to receive.

Count II therefore fails to state a claim for unjust enrichment and must be dismissed.

### C.  Count III for copyright infringement fails to allege infringement of exclusive ownership rights and does not satisfy the legal prerequisite for statutory damages.

Count III alleges that P3 owned a copyright in the television episodes and initially granted WTVP a license for the episodes; the license "failed" when WTVP informed P3 the 2022 tax deductible receipt was not valid; and P3 never gave PBS a license or authorized WTVP to reproduce the episodes in 2023 or 2024. Compl. ¶¶ 45-49. P3 alleges WTVP and PBS infringed on its copyright by airing the episodes on television and making them available on the internet. Compl. ¶ 50.

To raise a copyright infringement claim, a plaintiff must allege (1) it owns a valid copyright and (2) the defendant infringed the copyright by violating the plaintiff's exclusive rights in the copyrighted work. *See* 17 U.S.C. §§ 501(a), (b); *Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). There are various defenses to copyright infringement, including express license, implied license, abandonment, and fair use. *See* 8th Cir. Pattern Jury Instructions (PJI) Nos. 20.60-20.61; 7th Cir. PJI Nos. 12.7.1-12.7.3; 9th Cir. PJI Nos. 17.22-17.31.

First, Count III fails to provide notice to the defense as to how P3's exclusive rights to

the episodes were infringed. The pleading, including Exhibit B, states the exact opposite: there was a license granted for the episodes and P3 relinquished all rights to the same. Such licensure (authorized use) constitutes an affirmative defense to copyright infringement. Thus, Count III functionally pleads itself out of court. Despite a general allegation the license "failed" at some point, P3's infringement claim is not correspondingly limited.

Second, Count III fails to satisfy the legal prerequisite for statutory damages under the Copyright Act. Pursuant to the Act, a copyright owner may choose to recover two different forms of relief against an infringer: (1) actual damages and lost profits attributable to infringement; or (2) statutory damages in the court's discretion. *See* 17 U.S.C. §§ 504(b), (c). However, the Act establishes a prerequisite to recovery of statutory damages: no award of statutory damages or attorney's fees shall be made for (1) any infringement in an unpublished work commenced before the effective date of registration of the copyright; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of the registration of the copyright, unless such registration is made within three months after publication. 17 U.S.C. § 412. To obtain statutory damages, the copyright must be registered within these times. *See id.*

P3 in Count III seeks actual damages and WTVP's profits and, "[i]n the alternative, at P3 Group's election," "statutory damages in an amount up to $150,000.00 per copyright infringed plus attorney's fees." Compl. ¶ 55. However, P3 fails to allege the copyright has ever been registered at any time, much less within the time frames required by 17 U.S.C. § 412. Despite seeking statutory damages, the Complaint does not establish P3 satisfies the pre-requisite to such damages as set forth by the Copyright Act.

Count III fails to state a copyright infringement claim upon which relief can be

granted, and dismissal is therefore proper pursuant to Rule 12(b)(6).

**D.** **Count IV under the Arkansas Publicity Act is improper because (i) it is preempted by the Copyright Act and (ii) even if not preempted, the claim fails to assert the element of unauthorized, commercial use.**

The Copyright Act preempts the state law rights asserted in Count IV, as those rights are equivalent to the rights protected under the Copyright Act. Even if the state law is not preempted, Count IV should be dismissed because it fails to assert unauthorized, commercial use as required by the Arkansas Publicity Act.

*i.* *Count IV is preempted by the Copyright Act.*

In Count IV, Plaintiff Brown alleges a state law claim of Invasion of Privacy (Appropriation of Name and Likeness – Ark. Code Ann. § 4-75-1101 et seq.) based on Defendants' unauthorized "copying, distributing, and exhibiting" of television episodes of which Brown was a part. Compl. ¶¶ 57-58. Critically, the Copyright Act of 1976 contains a preemption provision with respect to other laws:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). The referenced sections 102 and 103 of the Copyright Act describe "subject matter of copyright," e.g., what works are copyrightable, while section 106 describes the exclusive rights belonging to a copyright owner. 17 U.S.C. §§ 102, 103, 106. The Act thus preempts a plaintiff's state law claims if two conditions are satisfied: "(1) the work at issue is within the subject matter of copyright as defined in [section] 102 and 103 of the Copyright Act; and (2) the state law created right is equivalent to any of the exclusive rights within the

general scope of copyright as specified in [section] 106 of the Act." *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1142 (8th Cir. 2015) (quoting *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993)). Both prongs of this analysis are satisfied here.

First, the work at issue is within the subject matter of copyright. The Copyright Act defines the subject matter of copyright as "original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). The Act specifically includes "motion pictures and other audiovisual works" as protected "works of authorship." *Id.* at (a)(6). The protection of the Act has been found to extend to television programs. *Ray*, 783 F.3d at 1143 (finding television broadcast of recorded sport performance within subject matter of copyright).

Here, Brown's likeness and name at issue are those contained in the television episodes. The episodes constitute an original work of authorship that was fixed in a tangible medium of expression and could be perceived, reproduced, or otherwise communicated. The Complaint itself alleges the episodes are intellectual property "copyrightable under the Copyright Act." Compl. ¶ 46. This material, therefore, is within the subject matter of copyright law for the purposes of this analysis. *See, e.g., Ray*, 783 F.3d at 1143-44 (citing cases and holding plaintiffs' "'likenesses could not be detached from the copyrighted performances'" on film and consequently were subject matter of copyright for preemption).

Second, Brown's rights asserted under state law in Count IV are equivalent to the rights protected under the Copyright Act. The Copyright Act gives copyright owners "exclusive rights to do and to authorize" certain actions with respect to copyrighted work, including reproduction in copies or phonorecords; the preparation of "derivative works

based upon the copyrighted work"; the distribution of copies of the copyright worked to the public by sale or rental; and, "in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly." 17 U.S.C. § 106. Thus, "[a] claim asserted to prevent nothing more than the reproduction, performance, distribution, or display" of a copyrighted material "is subsumed by copyright law and preempted." *No Doubt v. Activision Publ'g, Inc.*, 702 F. Supp. 2d 1139, 1144 (C.D. Cal. 2010).

For a state law claim to be considered *non*-equivalent for this prong of the analysis, it must contain "qualitatively different elements than those contained in a copyright infringement suit." *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1145 (9th Cir. 2006). A state law claim may be considered equivalent and preempted even if its elements are not identical to a copyright action; rather, any extra element in a state law claim "must transform the nature of the action" to prevent preemption. *Laws*, 448 F.3d at 1144.

Here, Brown claims the television episodes were "published" on WTVP and PBS's websites, and thus furthered WTVP progress toward PBS reporting standards. Compl. ¶ 25. In other words, the crux of the claim is that the episodes were published without authorization. This is also the basis of Count III for copyright infringement. *See* Compl. ¶¶ 50-51. Brown nonetheless attempts to assert a state-law claim in Count IV: that WTVP and PBS, "[i]n copying, distributing, and exhibiting" the episodes, violated Brown's rights to his name and likeness under Arkansas law, Ark. Code Ann. § 4-75-1101, et seq. Compl. ¶¶ 57-58.

Under Arkansas' Publicity Rights Protection Act of 2016, "[a]n individual has a

property right in the commercial use by any medium in any manner without the individual's prior consent" of his or her name, voice, photograph, likeness, or any combination thereof, and is entitled to recover for unauthorized commercial use of the same. Ark. Code Ann. §§ 4-75-1104(a), -1109. The Act provides that a person "who commercially uses" such a name or likeness is liable to the holder of the publicity right for damages and disgorgement of profits "if the commercial use was not authorized." Ark. Code Ann. § 4-75-1108(a). The Act provides its remedies "shall constitute the exclusive basis for asserting a claim for the unauthorized commercial use of" the name or likeness of an individual. Ark. Code Ann. § 4-75-1111.

Brown claims that his rights under the Arkansas Publicity Act were infringed by Defendants' unauthorized publication of the episodes in which he was a part. The act constituting the alleged violation of Brown's rights corresponds exactly to the act necessary for copyright infringement. The mere presence of the element of "commercial use" in the Arkansas' Publicity Rights Act "is not enough to qualitatively distinguish [Plaintiff Brown's claim] from a claim in copyright." *Laws*, 448 F.3d at 1144 (rejecting argument that "commercial use" was extra element preventing preemption). Even if this is an additional element, it does not so transform the underlying nature of the action so as to remove it from the ambit of copyright and preemption. *Id.* at 1144-45 ("Although the elements of [plaintiff's] state law claims may not be identical to the elements in a copyright action, the underlying nature of [plaintiff's] state law claims is part and parcel of a copyright claim."); *see also Dryer v. Nat'l Football League*, 814 F.3d 938 (8th Cir. 2016) (finding recorded films of sport performance were not commercial speech and "[t]he Copyright Act therefore preempts the [plaintiffs'] attempt to control dissemination of the films and thereby exercise a right equivalent to 'exclusive rights granted by copyright.'"). Brown's allegedly infringed state-law

rights are thus equivalent to the exclusive rights within the scope of copyright.

Count IV's appropriation of name and likeness claim is preempted by the Copyright Act. Dismissal is appropriate. *See*, *e.g.*, *Ray*, 783 F.3d at 1144-45 (affirming preemption and dismissal of state law claims of invasion of privacy; misappropriation of name; infringement of right of publicity; interference with prospective economic advantage); *Laws,* 448 F.3d at 1142-43 (preempting a right-of-publicity claim based on reproduction of a voice recording).

### ii. Count IV fails to state a claim under the Arkansas Publicity Act because there was no unauthorized, commercial use.

Finally, even if Count IV were not preempted, it would still fail to state a claim under the Arkansas Publicity Act. Under the Act, the publicity right is freely transferable, assignable and licensable. Ark. Code Ann. § 4-75-1104(b), (c). As noted above, a person may be liable to the holder of the publicity right when they commercially use the name or likeness without authorization. *See* Ark. Code Ann. § 4-75-1108(a). The Act defines "commercial use" as use for advertising, selling, or soliciting purchase, or in connection with products or goods. Ark. Code Ann. § 4-75-1103(1)(A). The Act explicitly states "commercial use" does *not* mean use of name/likeness to identify the individual for the purpose of data collection or data reporting, or certain data processing. Ark. Code Ann. § 4-75-1103(1)(B).

Here, the Complaint acknowledges there was a license granted for use of the episodes containing the name and likeness at issue. It fails, however, to allege any "commercial use." The Complaint alleges the episodes were published by WTVP and PBS, and thus also furthered WTVP progress toward PBS reporting standards, which were considered in funding. Compl. ¶ 25. At most, this constitutes use of the name/likeness for the purpose of data collection and reporting, which the Act explicitly excludes from the definition of "commercial use." Ark. Code Ann. § 4-75-1103(1)(B). This is categorically not a "commercial

use" as contemplated by the Act, i.e., for advertising, selling or soliciting purchase of products or goods. What's more, both Defendants are non-profit corporations, thus reinforcing the lack of commercial purpose of the entities and, by extension, the invalidity of this claim. Ex 1, Decl. of Gordon ¶ 4; Ex. 2, Decl. of Rubenstein ¶ 3; Compl. ¶ 4

Count IV thus fails to satisfy the "unauthorized commercial use" basis for liability under the Arkansas Publicity Act and should therefore be dismissed.

### E. Count V fails to state a negligence claim because it fails to state a legal duty in tort and, alternatively is barred by the economic loss doctrine.

Count V, a generalized negligence count, faults WTVP for a litany of things: that it knew or should have known it was "incapable of compensating" P3 for the episodes, that it had a duty to inform P3 of this fact; and that it breached this duty by failing to exercise ordinary care to ensure it did not enter into an agreement with obligations it could not fulfill. Compl. ¶¶ 61-63.

Ironically, Count V fails to establish a duty of care owed by WTVP. A negligence claim consists of four elements: duty, breach, causation, damages. *In re SuperValu, Inc.*, 925 F.3d 955, 962-63 (8th Cir. 2019). It is a plaintiff's burden to plead (and eventually prove) these elements, including the existence of a duty of care owed by the defendant to the plaintiff. *Id.*

Here, the Complaint generally asserts WTVP breached a duty not to enter into agreements containing obligations it could or would not fulfill. The legal source of this duty is not articulated. In any event, Count V alleges no separate legal duty apart from a *contract* premise, sufficient to give rise to common law *tort* liability. In short, the Complaint alleges that a breach of a contract obligation arose from a lack of due care, but this is not enough to transform a breach of contract allegation into a negligence tort claim. *See Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 551 (N.Y. App. 1992) (discussing distinction between tort and

contract duties).

Count V also fails due to the economic loss doctrine.[1] Under the economic loss doctrine, a plaintiff cannot recover in tort against a defendant for purely economic losses arising out of the parties' relationship. *See, e.g., Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). This rule is rooted in the principle that such pecuniary losses do not arise from breached common law tort duties, but rather arise from a contractual or commercial relationship between the parties. *See id.* In Count V, the Complaint seeks purely economic damages for negligence, based on a duty ostensibly grounded in a breached contractual obligation. Count V thus falls squarely with the economic loss doctrine, meaning P3 is barred from recovering in tort.

Count V fails to state a claim and should be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

WHEREFORE, Defendants Illinois Valley Public Telecommunications Corporation d/b/a WTVP-TV, and The Public Broadcasting Service move this Court to enter an order dismissing Plaintiffs' Complaint in its entirety with prejudice.

---

[1] As analyzed above, jurisdiction in this matter is not proper due to lack of contact with Arkansas. Illinois law has a more significant relationship to the parties and the State of Arkansas has nigh non-existent connection to the allegations. *See Bourgeois v. Vanderbilt*, 639 F. Supp. 958, 962-64 (W.D. Ark. 2009) (applying Louisiana law due to choice-of-law considerations). As such, Illinois law should apply.

Respectfully submitted,

Paul D. Waddell (ABN 87179)
WADDELL, COLE & JONES, PLLC
P.O. Box 1700
Jonesboro, AR 72403

John P. Heil, Jr. (IL ARDC #6237286)
Tyler W. Smith (IL ARDC #6327623)
Kathryn Johnson-Monfort (IL ARDC #6345611)
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
300 Hamilton Boulevard
Peoria, IL 61602
(Pro Hac Admission Pending)

By: /s/ Paul D. Waddell
    Attorneys for Defendants
    Illinois Valley Public Telecommunications
    Corporation d/b/a WTVP-TV *and*
    The Public Broadcasting Service

## **CERTIFICATE OF SERVICE**

   I, Paul D. Waddell, hereby certify that a true and correct copy of the foregoing documents was filed via CM/ECF on November 19, 2024, which will send notification to all counsel of record:

Matthew B. Finch
Aaron M. Heffington
GILL RAGON OWEN, P.A.
425 W. Capitol Ave., Suite 3800
Little Rock, AK 72201
finch@gill-law.com
heffington@gill-law.com


            Paul D. Waddell _____